In the Matter of David Franklin
ROBERTSON and Andrea S.
Robertson, Debtors.

Roger W. MOISTER, Jr., as Trustee in Bankruptcy for David Franklin Robertson and Andrea S. Robertson, Plaintiff,

v.

DeKALB FEDERAL SAVINGS & LOAN ASSOCIATION and the State of Georgia, Defendants.

Bankruptcy No. 80–00784A.
Adv. No. 81–0140A.

United States Bankruptcy Court,
N. D. Georgia,
Atlanta Division.

Oct. 13, 1981.

Roger W. Moister, Jr., Atlanta, Ga., for plaintiff.

Anthony Smith, Atlanta, Ga., for DeKalb Federal Sav.

Brenda Hill Cole, Asst. Atty. Gen., Atlanta, Ga., for State of Georgia.

## MEMORANDUM OF OPINION

A. D. KAHN, Bankruptcy Judge.

After the trial on the Trustee's complaint to sell certain improved realty free and clear of liens, this Court reserved ruling on the question of an assessment of reasonable, necessary costs and expenses pursuant to § 506(c) of the Bankruptcy Reform Act of 1978 (the "Code"). On March 6, 1981, an order was entered authorizing the sale proposed by the Trustee and determining that DeKalb Federal Savings and Loan Association ("DeKalb Federal") and the State Revenue Commissioner of Georgia ("State") both had valid liens, and that between them, "the lien of DeKalb Federal Savings and Loan is determined as first priority as against the proceeds of sale and the lien of State Revenue Commissioner of Georgia is determined as a second priority against said proceeds." *Moister v. DeKalb Federal Savings and Loan Association*, No. 81–0140A (N.D.Ga. Mar. 6, 1981) (Order). The Court also ordered the disbursement of funds from the proceeds.

The Trustee has reported disbursement as follows:

| | |
|---|---|
| Sales Price: | $47,900.00 |
| Less expenses of sale: (commission, points, closing costs, etc.) | 7,089.40 |
| Less adjustment to sellers account: (prorated items) | 803.22 |
| Paid to DeKalb Federal as of closing date: | 37,172.74 |
| Payable to State of Georgia and held by Trustee per Order: | 1,356.08 |
| Net to Bankruptcy Estate | $ 1,478.56 |

Trustee's Brief Pertaining To Recovery Of Expenses Under Bankruptcy Code 506(c) at 2.

No appeal was taken from the Order of March 6, 1981.

This Memorandum of Opinion and the accompanying Order are entered in furtherance of the previous Order of this Court, after consideration of the briefs filed by the parties in interest.

The Trustee has asserted that he is entitled to recover reasonable expenses of ad-

ministration pursuant to Section 506(c) of the Code. It is his position that DeKalb Federal and the State consented to the sale of the property and to the Trustee's recovery of reasonable and necessary expenses for disposing of the property, pursuant to Section 506(c) of the Code. The Trustee requests a hearing to offer proof of said expenses. Alternatively, relying on pre-Code case law, the Trustee has asserted a right to recover those costs which the secured creditor or lienholder would have incurred in a state court foreclosure proceeding.

The Court will first consider the Trustee's contentions with respect to DeKalb Federal.

The first question presented is whether DeKalb Federal is liable to the estate or to the Trustee for reasonable expenses of administration pursuant to Section 506(c). The administrative expenses sought by the Trustee apparently include a claim for some thirty (30) hours spent by the Trustee in selling the real property in this Chapter 7 case.

The Trustee has urged that certain factors demonstrate that DeKalb Federal (and the State) consented to the sale of the Debtors' real property and the recovery by the Trustee of reasonable and necessary expenses for disposing of the property pursuant to Section 506(c). The Trustee pointed out that DeKalb Federal did not move to lift the stay, that it never formally sought adequate protection, and that DeKalb Federal offered no objection to the sale by the Trustee. Finally, the Trustee argued that DeKalb Federal received benefit from the sale.

■ The foregoing considerations do not warrant a finding that DeKalb Federal *impliedly* consented to paying reasonable expenses of administration. Considering the value of the property as evidenced by the sales price, and the liens against the property, it is understandable that DeKalb Federal did not take a more active role in the proceedings. Such inaction by a secured creditor under these circumstances cannot

be deemed to be consent to the payment of administrative expenses.

The case cited by the Trustee, *In re Hotel Associates, Inc.*, 6 B.R. 108, 6 B.C.D. 939 (Bkrtcy.1980), is inapplicable to the case at bar. In *In re Hotel, supra*, the court said:

Where, as in the instant case, the sole asset of the debtor is heavily encumbered, and where the holder of the senior secured claim moves the court to appoint a trustee, such creditor has not only impliedly consented to the trustee's costs and expenses, but has insured that those costs and expenses will be incurred. The [secured creditor] has clearly decided to "run a risk of loss" in order to make possible a Chapter 11 Plan of its own devising. (citation omitted)

Having failed to move to lift the stay of these proceedings, and having itself moved for the appointment of the trustee, alleging the interests of creditors, including itself, the [secured creditor] has, by necessary implication, consented to the reasonable and necessary expenses of preserving the property . . . .

*Id.* 6 B.R. 108, 6 B.C.D. at 942.

*In re Hotel* involved a Chapter 11 proceeding in which the secured creditors, eyeing reorganization, actively sought the appointment of a Trustee to further that goal. In this case DeKalb Federal could have ultimately realized full satisfaction of its claim without the intervention of the Trustee. There is no justification for finding DeKalb Federal liable for the administrative costs sought in this case based on an implied consent theory.

Finally, the Code itself states in part: The Trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or *disposing of*, such property *to the extent of any benefit to the holder of such claim.* (emphasis added)

11 U.S.C. § 506(c) (1981).

■ The foregoing provision [1] does not permit the recovery of the costs sought by

1. Congressional comment about Section 506(c) included the following:

" 'Subsection (c) also codifies current law by

the Trustee from the holder of a first priority security deed where, as here, the proceeds from the sale of the property are sufficient to cover the actual costs associated with the sale and to pay the holder of the security deed in full, with funds left over for the estate.

This statutory interpretation is consistent with the reasoning of the Fourth Circuit in *Textile Banking Co., Inc. v. H. E. Widener*, 265 F.2d 446, 453 (4th Cir. 1959):

> In most cases where, at the time of bankruptcy, there are debts against the bankrupt secured on specific property the trustee is forced to decide whether he will abandon the property to the creditor as offering no equity for the estate, or whether it should be sold in the bankruptcy proceedings in the expectation that a surplus will be realized for the benefit of the general creditors. This decision is to be made in the exercise of a sound judgment under the approval of the Court. But where the trustee has elected to sell the encumbered property he cannot intrench (sic) upon the amount of the secured debt for the payment of any of the expenses of administration, such as commissions and similar costs. Such costs can be taken only out of any surplus realized over and above the amount necessary to pay the secured debt.

Thus, the Trustee may not recover the particular administrative costs from DeKalb Federal. Any other result would be inequitable. *Oppenheimer v. Oldham*, 178 F.2d 386 (5th Cir. 1949).

■ The final question is whether the Trustee may recover from DeKalb Federal the costs which it would have paid to foreclose its lien in a state court proceeding. In some cases where the Trustee has sold property subject to a lien, the lienholder has been required to contribute to the estate the expenses that would have been incurred

upon foreclosure; this result seems to have been permitted primarily where the amount of the debt owed the lienholder exceeded the value of the property. *See Odendahl v. Pokorny Realty Co.*, 76 F.2d 271 (5th Cir. 1935); *Reconstruction Finance Corp. v. Rhodes*, 214 F.2d 606 (5th Cir. 1954). The underlying rationale of awarding foreclosure costs to the estate was that the sale of the property by the Trustee saved the lienholder costs that the lienholder would have incurred.

The Court has noted that DeKalb Federal, who was fully secured, would have ultimately realized full satisfaction of its claim without the intervention of the Trustee. If DeKalb Federal had foreclosed, its recovery would have included its foreclosure costs. For these reasons the Trustee may not recover foreclosure costs from DeKalb Federal.

■ There remains the question of the Trustee's attempted recovery from the State. The Trustee is barred from recovery from the State pursuant to § 506(c) for the same reasons he is barred from recovery from DeKalb Federal. In addition, there was no implied agreement by the State to pay costs. Finally there is no justification for requiring the State to contribute alleged foreclosure costs.

In closing the Court notes that the issues raised herein have resulted from the Trustee's attempt to charge secured creditors with certain administrative costs. Several related issues have not been specifically addressed: the Trustee's right to compensation, 11 U.S.C. § 330; the source of funds for Trustee compensation; and, § 724(b) of the Code, which is applicable only in Chapter 7 cases, 11 U.S.C. § 103(b). With respect to the first issue, one commentator has suggested, and rightfully so, that the Trustee is not entitled to compensation for a sale where it is apparent that the equity for the creditors is minimal or nonexistent.

---

permitting the trustee to recover from property whose value is greater than the sum of the claims secured by a lien on that property that reasonable, necessary costs and expenses of preserving, or disposing of, the property. The recovery is limited to the extent of any benefit to the holder of such claim.' "

3 *Collier on Bankruptcy* ¶ 506.06 (15th Ed. 1981) (citations omitted).

11A *Collier on Bankruptcy* ¶ 17.004 (14th Ed. 1978).

The Court has already ruled that DeKalb Federal has first priority against the proceeds of the sale, and the State has a second priority against said proceeds. If the Trustee had filed a claim for administrative expense pursuant to 11 U.S.C. § 330 and 11 U.S.C. § 507(a)(1), such a claim may well have had a priority over the State's tax lien. 11 U.S.C. § 724(b). But that issue was not raised by the Trustee although he had full opportunity to do so, and the prior determination is now *res judicata* to him.